In the

# United States Court of Appeals
## For the Seventh Circuit

_____

No. 16-3863

MEDICAL COLLEGE OF WISCONSIN AFFILIATED HOSPITALS, INC.,

*Plaintiff-Appellant,*

*v.*

UNITED STATES OF AMERICA,

*Defendant-Appellee.*

_____

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 14-C-1477 — **C.N. Clevert, Jr.**, *Judge.*

_____

ARGUED APRIL 10, 2017 — DECIDED APRIL 25, 2017

_____

Before EASTERBROOK, ROVNER, and SYKES, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* Medical College of Wisconsin, a nonprofit corporation, received a refund of Social Security (FICA) taxes after the Internal Revenue Service ruled that medical residents were exempt from them until April 1, 2005. (A regulation governing later periods requires hospitals to pay FICA taxes on residents' salaries. See *Mayo Foundation for Medical Education & Research v. United States*, 562

U.S. 44 (2011).) The IRS added to the refund approximately $13 million in interest but later demanded $6.7 million back, informing Medical College that it had used too high a rate. Medical College returned the money and filed this suit under 28 U.S.C. §1346(a)(1), asking to have the disputed sum restored. See also 26 U.S.C. §7422. The district court rejected its request, 2016-2 U.S. Tax Cas. (CCH) ¶50,409 (E.D. Wis. Sept. 14, 2016), precipitating this appeal.

The parties' dispute arises from 26 U.S.C. §6621, which begins:

> (a) General rule.
>
> > (1) Overpayment rate. The overpayment rate established under this section shall be the sum of—
> >
> > > (A) the Federal short-term rate determined under subsection (b), plus
> > >
> > > (B) 3 percentage points (2 percentage points in the case of a corporation).
> >
> > To the extent that an overpayment of tax by a corporation for any taxable period (as defined in subsection (c)(3), applied by substituting "overpayment" for "underpayment") exceeds $10,000, subparagraph (B) shall be applied by substituting "0.5 percentage point" for "2 percentage points".

The IRS initially paid Medical College interest at the federal short-term rate plus 3 percentage points under §6621(a)(1)(B) but then decided that interest should be paid at the short-term rate plus 2 percentage points for the first $10,000 and 0.5 percentage points for the rest. Medical College contends that the IRS got it right the first time, because, in light of subsection (c), a nonprofit is not the sort of corporation to which paragraph (a)(1)(B) refers.

Subsection (c) reads:

(c) Increase in underpayment rate for large corporate under-payments.

(1) In general. For purposes of determining the amount of interest payable under section 6601 on any large corporate underpayment for periods after the applicable date, paragraph (2) of subsection (a) shall be applied by substituting "5 percentage points" for "3 percentage points".

(2) Applicable date. For purposes of this subsection—

(A) In general. The applicable date is the 30th day after the earlier of—

(i) the date on which the 1st letter of proposed deficiency which allows the taxpayer an opportunity for administrative review in the Internal Revenue Service Office of Appeals is sent, or

(ii) the date on which the deficiency notice under section 6212 is sent. The preceding sentence shall be applied without regard to any such letter or notice which is withdrawn by the Secretary.

(B) Special rules.

(i) Nondeficiency procedures. In the case of any underpayment of any tax imposed by this title to which the deficiency procedures do not apply, subparagraph (A) shall be applied by taking into account any letter or notice provided by the Secretary which notifies the taxpayer of the assessment or proposed assessment of the tax.

(ii) Exception where amounts paid in full. For purposes of subparagraph (A), a letter or notice shall be disregarded if, during the 30-day period beginning on the day on which it was sent, the taxpayer makes a payment equal to the amount shown as due in such letter or notice, as the case may be.

(iii) Exception for letters or notices involving small amounts. For purposes of this paragraph, any letter or notice shall be disregarded if the amount of the deficiency or proposed deficiency (or the assessment or proposed assessment) set forth in such letter or notice is not greater than $100,000 (determined by not taking into account any interest, penalties, or additions to tax).

(3) Large corporate underpayment. For purposes of this subsection—

(A) In general. The term "large corporate underpayment" means any underpayment of a tax by a C corporation for any taxable period if the amount of such underpayment for such period exceeds $100,000.

(B) Taxable period. For purposes of subparagraph (A), the term "taxable period" means—

(i) in the case of any tax imposed by subtitle A, the taxable year, or

(ii) in the case of any other tax, the period to which the underpayment relates.

Most of subsection (c) is irrelevant to the computation of interest under subsection (a). True, subsection (a) absorbs the definition of "taxable period" from paragraph (c)(3), but that definition does not assist Medical College.

Medical College sees greater significance in subsection (c). It points to subparagraph (c)(3)(A), which defines the term "large corporate underpayment" as an underpayment of more than $100,000 by a "C corporation." According to Medical College, nonprofit corporations are not C corporations. (We indulge that assumption in this opinion, though it is hard to reconcile with 26 U.S.C. §1361(a)(2), which defines as a C corporation every corporation that is not an S corporation.) That "C corporation" excludes not-for-profit entities is

significant, Medical College insists, because reading the word "corporation" in subsection (a) to mean C corporation would entitle all nonprofit corporations to the higher rate of interest called for by paragraph (a)(1). Two other courts of appeals have considered this line of argument; both have rejected it. *Maimonides Medical Center v. United States*, 809 F.3d 85 (2d Cir. 2015); *United States v. Detroit Medical Center*, 833 F.3d 671 (6th Cir. 2016). Medical College wants us to disagree with these decisions, but we find them persuasive.

The cornerstone of Medical College's argument is that one word means the same thing throughout a statutory section. See Antonin Scalia & Bryan A. Garner, *Reading Law* Canon 25 (2012). Scalia and Garner call this canon the "Presumption of Consistent Usage"; Medical College prefers the Latin *in pari materia*. Either way, the contention is that if "corporation" means "for-profit corporation" in subsection (c), then "corporation" means the same thing throughout §6621 even though in other parts of the Internal Revenue Code—as indeed in other titles of the United States Code, such as the diversity jurisdiction of 28 U.S.C. §1332(a)—an incorporated nonprofit entity is a "corporation."

At least two things are wrong with this line of argument.

First, subparagraph (c)(3)(A) does not define the word "corporation." It defines the phrase "large corporate underpayment." That phrase doesn't contain the noun "corporation," and the use of "corporate" as an adjective does not tell us anything about the kind of corporation involved. The rest of that subsection tells us that the phrase as a whole means an underpayment of more than $100,000 by a C corporation, but this does not say or imply that every reference to "corporation" in all of §6621 means "C corporation." To the contra-

ry, the distinction between "corporation" in subsection (a) and "C corporation" in subparagraph (c)(3)(A) implies a different meaning. A presumption that a single word means the same thing throughout a statute goes together with a presumption that different words mean different things.

Second, paragraph (c)(3) tells us how far its definitions extend. It begins "[f]or purposes of this subsection"—in other words, subsection (c), the only part of §6621 in which "large corporate underpayment" plays a role. What Scalia and Garner call the presumption of consistent usage is just that: a presumption. It is overcome by other indicators, such as a provision that a definition covers just one subsection. *Koons Buick Pontiac GMC, Inc. v. Nigh*, 543 U.S. 50 (2004), is among many decisions showing that the Justices take seriously the way statutory subdivisions refer to each other. Subsection (a) likewise tells us exactly how much of paragraph (c)(3) is borrowed: its definition of "taxable period". The rest of paragraph (c)(3) pertains to subsection (c) alone.

It follows from each of these reasons that Medical College was entitled to interest at the rate for all corporations. This is where matters now stand, so Medical College is not entitled to more. The opinions in *Maimonides Medical Center* and *Detroit Medical Center* address these issues in greater detail. To the extent we have skipped over any of Medical College's arguments, it is enough to say that we agree with our colleagues in the Second and Sixth Circuits.

AFFIRMED