# United States Court of Appeals for the Federal Circuit

---

**CHARLESTON AREA MEDICAL CENTER, INC., CAMC HEALTH EDUCATION AND RESEARCH INSTITUTE, INC., ON BEHALF OF THEMSELVES AND ALL OTHER TAXPAYERS SIMILARLY SITUATED,**
*Plaintiffs-Appellants*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2018-2226

---

Appeal from the United States Court of Federal Claims in No. 1:17-cv-01528-EDK, Judge Elaine Kaplan.

---

Decided: October 17, 2019

---

THOMAS D. SYKES, Law Offices of Thomas D. Sykes, LLC, Lake Forest, IL, argued for plaintiffs-appellants.

JENNIFER MARIE RUBIN, Tax Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by DEBORAH K. SNYDER, RICHARD E. ZUCKERMAN.

---

Before LOURIE, O'MALLEY, and CHEN, *Circuit Judges.*

O'MALLEY, *Circuit Judge.*

This case is about the interpretation of 26 U.S.C. § 6621(a)(1), which provides the interest rate that the Internal Revenue Service ("IRS") must use in calculating the amount of interest owed on a tax refund. Section 6621(a)(1) requires the IRS to apply a lower interest rate for refunds owed to "corporations" than for refunds owed to other types of entities. Charleston Area Medical Center, Inc. and CAMC Health Education and Research Institute (collectively, "the Taxpayers") applied for a tax refund arguing that they are entitled to the higher interest rate because they are nonprofit entities and not corporations. The IRS disagreed and applied the lower interest rate to calculate the refund owed to the Taxpayers. The U.S. Court of Federal Claims ("Claims Court") affirmed, reasoning that the Taxpayers, who are incorporated under state law, are corporations under § 6621(a)(1) notwithstanding their status as nonprofit entities. *Charleston Area Med. Ctr., Inc. v. United States*, 138 Fed. Cl. 626 (2018). The Taxpayers appeal.

Although this is an issue of first impression for our court, four other circuits have concluded that a nonprofit entity that is incorporated under state law is a corporation under § 6621(a)(1). *Maimonides Med. Ctr. v. United States*, 809 F.3d 85 (2d Cir. 2015) ("*Second Circuit*"); *United States v. Detroit Med. Ctr.*, 833 F.3d 671 (6th Cir. 2016) ("*Sixth Circuit*"); *Med. College of Wis. Affiliated Hosps. v. United States*, 854 F.3d 930 (7th Cir. 2017) ("*Seventh Circuit*"); *Wichita Ctr. for Graduate Med. Educ., Inc. v. United States*, 917 F.3d 1221 (10th Cir. 2019) ("*Tenth Circuit*"). While it is not unheard of for appellants revisiting questions previously considered by other courts to hit the circuit split jackpot, this is not such an instance. We agree with the interpretative path taken by our sister circuits—not

because those decisions came first, but because they were correct. Therefore, we affirm.

## I. LEGAL BACKGROUND

The central issue in this appeal is straightforward—does the word "corporation," as it appears in 26 U.S.C. § 6621(a)(1), include nonprofit entities that are incorporated under state law. But the simplicity ends there. As is often the case with issues involving the Internal Revenue Code ("Code"), the parties' arguments rely on various authorities—including three provisions of the Code, two iterations of a Treasury regulation, and a notice of proposed rulemaking issued by the IRS on March 1, 2018. We detail each below.

### A. Code Provisions

Section 6621(a)(1), the specific provision at issue in this appeal, recites:

> (1) OVERPAYMENT RATE The overpayment rate established under this section shall be the sum of—
>
> (A) the Federal short-term rate determined under subsection (b), plus
>
> (B) 3 percentage points (2 percentage points in the case of a *corporation*).
>
> To the extent that an overpayment of tax by a *corporation* for any taxable period (as defined in subsection (c)(3), applied by substituting "overpayment" for "underpayment") exceeds $10,000, subparagraph (B) shall be applied by substituting "0.5 percentage point" for "2 percentage points".

*Id.* (emphases added). Section 6621(a)(1) provides that if the taxpayer is a corporation and its overpayment exceeds $10,000, the first $10,000 will bear interest at the Federal short-term rate plus two percentage points, and the

remainder will bear interest at the Federal short-term rate plus one-half of a percentage point. If the taxpayer is not a corporation and its overpayment exceeds $10,000, the entire overpayment will bear interest at the Federal short-term rate plus three percentage points. *Id.* In plain English, a taxpayer's refund is greater if the IRS applies the formula set out for noncorporations than if it applies the formula set out for corporations.

The sentence in § 6621(a)(1) beginning with the phrase "To the extent" is referred to as the "flush language." The flush language cross-references subsection (c)(3), which in turn, provides:

> (3)  LARGE CORPORATE UNDERPAYMENT For purposes of this subsection—
>
> (A)  IN GENERAL The term "large corporate *underpayment*" means any *underpayment* of a tax by a *C corporation* for any taxable period if the amount of such underpayment for such period exceeds $100,000.
>
> (B)  TAXABLE PERIOD For purposes of subparagraph (A), the term "*taxable period*" means—
>
> (i)  in the case of any tax imposed by subtitle A, the taxable year, or
>
> (ii)  in the case of any other tax, the period to which the *underpayment* relates.

*Id.* (emphases added).

While § 6621 does not define "corporation" for purposes of that section, § 7701(a)(3) provides a Code-wide definition for the term:

> (a)  When used in this title, where not otherwise distinctly expressed or manifestly incompatible with the intent thereof—
>
> * * *

    (3) CORPORATION The term 'corporation' *includes* associations, joint-stock companies, and insurance companies.

*Id.* (emphasis added).

### B. Treasury Regulations

Treasury has promulgated different versions of regulations that attempt to classify various entities as corporations. The Kintner Regulations were enacted in 1960 and remained in effect through 1996, when they were superseded by the modern regulations on January 1, 1997. 25 Fed. Reg. 10,928 (Nov. 17, 1960); 61 Fed. Reg. 66,584 (Dec. 18, 1996). While in effect, the Kintner Regulations "aid[ed] in classifying business associations that were not incorporated under state incorporation statutes but that had certain characteristics common to corporations and were thus subject to taxation as corporations under the federal tax code." *Littriello v. United States*, 484 F.3d 372, 375 (6th Cir. 2007)). These characteristics, under the regulations, included: "(i) [a]ssociates, (ii) an objective to carry on business and divide the gains therefrom, (iii) continuity of life, (iv) centralization of management, (v) liability for corporate debts limited to corporate property, and (vi) free transferability of interests." 25 Fed. Reg. at 10,929–30.

The modern regulations attempted to simplify the entity classification rules. *See* 61 Fed. Reg. at 66,584 ("The existing regulations for classifying business organizations as associations (which are taxable as corporations under section 7701(a)(3)) or as partnerships under section 7701(a)(2) are based on the historical differences under local law between partnerships and corporations. Treasury and the IRS believe that those rules have become increasingly formalistic. This document replaces those rules with a much simpler approach that generally is elective."). Under these regulations, a corporation means, *inter alia*, "[a] business entity organized under a Federal or State statute . . . if the statute describes or refers to the entity as

incorporated or as a corporation, body corporate, or body politic." 26 C.F.R. § 301.7701-2(b)(1).

### C. Treasury's Notice

On March 1, 2018, the IRS issued a notice regarding an entirely different section of the Code—Section 1061(c)(4)(A). Internal Revenue Service, IRS Bull. No. 2018-12 at 443, Guidance Under Section 1061, Partnership Interests Held in Connection with Performance of Services (Mar. 19, 2018) (hereinafter, "Notice"). Section 1061 generally concerns partnership interests held in connection with performance of services and excludes from the term "applicable partnership interest" "any interest in a partnership directly or indirectly held by a corporation." The Notice announces that the IRS and Treasury "intend to issue regulations providing guidance on the application of section 1061" and that "those regulations will provide that the term 'corporation' for purposes of section § 1061(c)(4)(A) does not include an S corporation." *Id.*

## II. PROCEDURAL HISTORY

The Taxpayers are non-stock, not-for-profit, § 501(c)(3) organizations incorporated in and under the laws of West Virginia. Although generally exempt from federal income tax, the Taxpayers are not exempt from taxes on "wages" from "employment" under the Federal Insurance Contributions Act ("FICA"). "Employment" under FICA has a broad definition but excepts, for example, service performed in the employ of a school by a student who is regularly enrolled and attending classes at the same school. 26 U.S.C. § 3121(b)(10).

In 2010, the IRS administratively determined that medical residents fall within that exception to "employment" and applied this determination retroactively. The IRS issued tax refunds to the Taxpayers, who had paid FICA taxes on medical residents for twenty-nine quarterly tax periods during the 1995 to 2005 taxable years. The IRS

paid interest on these tax refunds to the Taxpayers by applying the interest rate for corporations under § 6621(a)(1). The Taxpayers contend that, if the IRS had used the interest rate for noncorporations under § 6621(a)(1), they would have received approximately $1.9 million in additional statutory interest. The Taxpayers now seek to recover over $2 million in total—the $1.9 million in additional statutory interest plus interest. J.A. 2.

## A. Related Case

The Taxpayers first filed an action with a third plaintiff, Wichita Center for Graduate Medical Education, in the District of Kansas on February 26, 2016. The district court ultimately dismissed the Taxpayers' case for lack of venue, leaving Wichita Center as the only remaining plaintiff. *Wichita Ctr. for Graduate Med. Educ. v. United States,* No. 16-1054-JTM, 2016 WL 4000934 (D. Kan. July 26, 2016). It later granted summary judgment on the merits for the government, ruling that the term "corporation" as it appears in § 6621(a)(1) includes nonprofit entities. *Wichita Ctr. for Graduate Med. Educ. v. United States,* No. 16-1054-JTM, 2017 WL 6055708 (D. Kan. Dec. 7, 2017). Wichita Center appealed, and the Tenth Circuit affirmed consistent with the decisions of the three other circuits that addressed this issue before it. *Tenth Circuit,* 917 F.3d at 1227.

## B. The Claims Court's Decision

After the district court dismissed the Taxpayers' claims, they, along with 290 similarly-situated entities, tried again, this time by filing an action at the Claims Court in October 2017. The government moved for judgment on the pleadings on March 26, 2018, arguing that the IRS correctly applied the lower interest rate to the Taxpayers. The Taxpayers later moved for summary judgment and class certification. The Claims Court granted the government's motion for judgment on the pleadings, denied Charleston Area's motion for summary judgment, and thereby denied Charleston Area's motion for class

certification as moot. *Charleston Area Med. Ctr.*, 138 Fed. Cl. at 632–33.

Regarding the merits, the Claims Court found that the term "corporation" as it appears in § 6621(a)(1) includes nonprofit entities like the Taxpayers here. It reasoned that common usage, the Code's definition of the term in § 7701(a)(3), the structure of § 6621(a)(1), and the use of the term "corporation" in the Code as a whole "all indicate that the term 'corporation' in . . . § 6621 plainly encompasses both for-profit and not-for-profit corporations." *Id.* at 631. The Claims Court also rejected the Taxpayers' counterargument, based on the Kintner Regulations and the IRS Notice of March 1, 2018, that the term "corporation" in § 6621(a)(1) does not include nonprofit entities.

The Taxpayers appeal the Claim Court's determination on the merits as well as its decision to dismiss as moot the Taxpayers' motion for class certification. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).

## III. DISCUSSION

We conclude that the Taxpayers are corporations under § 6621 and that the Claims Court properly dismissed as moot the Taxpayers' motion for class certification.

### A. The Taxpayers are "Corporations" under § 6621(a)(1)

As a threshold matter, we address the definition of "corporation" contained in § 7701(a)(3). Typically, "[s]tatutory definitions control the meaning of statutory words." *Burgess v. United States*, 553 U.S. 124, 129 (2008). Where a statute provides an explicit definition, we must follow that definition even if it varies from the term's customary meaning. *Digital Realty Tr., Inc. v. Somers*, 138 S. Ct. 767, 776 (2018). Here, § 7701(a)(3) of the Code is a definitional statute that defines "corporation" as a term that "*includes* associations, joint-stock companies, and insurance companies." *Id.* (emphasis added). It is undisputed that medical

centers like the Taxpayers in this case do not fall into any of these three categories. *See Sixth Circuit*, 833 F.3d at 674. But, while a definition that declares what a term "means" excludes any unstated meaning, a definition that states what a term "includes" is open-ended. *See Burgess*, 553 U.S. at 130 (quoting *Colautti v. Franklin*, 439 U.S. 379, 392–93 n.10 (1979)). Given that § 7701(c) uses the inclusive word, "includes," the mere fact that the Taxpayers do not fall into the enumerated categories does not foreclose the possibility that they are corporations. And, "[i]n the absence of a statutory definition to the contrary, [we may] assume that Congress adopts the customary meaning of the terms it uses." *Sixth Circuit*, 833 F.3d at 674 (citing *Morissette v. United States*, 342 U.S 246, 263 (1952)).

The Taxpayers argue that we may not look to the customary meaning of "corporation," because § 7701(a)(3) resolves the issue presented. First, they contend that, under the statutory canons of *noscitur a sociis* and/or *ejusdem generis*,[1] § 7701(a)(3) excludes nonprofits from the definition of "corporation." Specifically, the Taxpayers contend that, because § 7701(a)(3) enumerates categories that are necessarily for-profit, such as "joint-stock companies[] and insurance companies," the definitional statute cannot be extended to cover nonprofit entities. Indeed, "a word is known by the company it keeps." *Yates v. United States*, 135 S. Ct. 1074, 1085 (2015).

---

[1] Both canons are related and differ only in nuanced ways. While both "canons require identifying a common trait that links all the words in a statutory phrase," *noscitur a sociis* is the doctrine applicable here. *Yates v. United States*, 135 S. Ct. 1074, 1097 (2015) (*Noscitur a sociis* "advises that words grouped in a list be given similar meanings."). According to the Taxpayers, the common trait among the enumerated categories here is that they are all for profit entities.

But the Taxpayers' argument fails because, although certain enumerated objects in § 7701(a)(3) may be strictly for-profit entities, the section also enumerates "associations." Associations are not strictly for-profit entities and the Taxpayers do not suggest otherwise. Appellants' Br. at 12–13 (identifying only "joint-stock companies" and "insurance companies" as for-profit and failing to address whether "associations" are for-profit); *see also* 26 C.F.R. § 29.3797-2 (1949) ("The term 'association' is not used in the Internal Revenue Code in any narrow or technical sense. It includes any organization, created for the transaction of designated affairs, or the attainment of some object, which, like a corporation, continues notwithstanding that its members or participants change, and the affairs of which, like corporate affairs, are conducted by a single individual, a committee, a board, or some other group, acting in a representative capacity."). This indicates that the definitional statute contemplates a broader definition of "corporation" that is not limited to for-profit entities.

Second, the Taxpayers argue that previous versions of § 7701(a)(3) limited the definition of "corporation" to only for-profit entities and that the amendment resulting in the current version was not meant to expand the meaning to include nonprofit entities. The language in § 7701(a)(3) originated in the Revenue Act of 1916, 39 Stat. 756, 789. Section 406 of that Act imposed an excise tax on "[e]very corporation, joint-stock company or association, now or hereafter *organized in the United States for profit* and having a capital stock represented by shares, and every insurance company." *Id.* (emphasis added).

In the Revenue Act of 1918, Congress enacted § 7701(a)'s predecessor, which recited the exact same language as the current version. Accordingly, it dropped from Section 406 of the 1916 Act the phrase "now or hereafter organized in the United States for profit and having a capital stock represented by shares," and added the word "includes" before enumerating the above-discussed categories

that qualify as corporations. The Taxpayers argue that Congress's use of similar language from the 1916 Act in the 1918 Act demonstrates that corporations should presently be limited to for-profit entities just as they were in the 1916 Act.

But the changes between the language in the two Acts actually cut against the Taxpayers' argument. Congress *removed the limiting phrase* "now or hereafter organized in the United States *for profit . . .*" and *added the inclusive word*, "includes." This demonstrates that Congress meant to expand the definition of corporation in the 1918 Act. *See Second Circuit*, 809 F.3d at 88 (finding that the § 7701(a) "serve[s] to *expand* the federal tax law meaning of 'corporation' beyond entities that would ordinarily fall under the term; it offers no hint that Congress intended to *contract* the ordinary meaning of the term in any way."). Indeed, that the 1916 Act included language specifying that the joint-stock companies and associations included in the section must be for-profit indicates that such companies and associations are not necessarily for-profit and further weakens the Taxpayer's reliance on the *noscitur a sociis* canon of statutory interpretation.

Because the definitional statute does not resolve the question of whether nonprofits are corporations, we next consider if the customary meaning of the term extends to nonprofit entities. We conclude that it does. The historical, common law understanding of "corporation" as well as new and old dictionaries indicate that nonprofit entities can be corporations. The Supreme Court held in 1819 that Dartmouth College is a corporation. *Trs. of Dartmouth Coll. v. Woodward*, 17 U.S. 518, 636 (1819) ("Being the mere creature of law, [a corporation] possesses only those properties which the charter of its creation confers upon it, either expressly, or as incidental to its very existence."). As the Sixth Circuit noted, the Court's holding in *Dartmouth College* rested on so firm a foundation that "permitting a college to be treated as a corporation [] might have been called

a cliché" at that time. *Sixth Circuit*, 833 F.3d at 674. There can be no doubt that the historical common law understanding of "corporation" extended to nonprofit entities such as the Taxpayers at issue here. *See generally id.* at 674–75 (collecting views of Edward Coke (1612), Chief Justice Marshall (1819), Justice Joseph Story (1833), and Edmund Seymour (1903)). Nor can there be any doubt that new and old dictionaries similarly define "corporation." *See generally id.* at 675–76 (collecting definitions from lay dictionaries, including *Oxford English Dictionary* (2016) and *Webster's New Int'l Dictionary* (1934), as well as legal dictionaries, including the 1910 and 2014 editions of *Black's Law Dictionary*).

Finally, other circuits have held that an entity incorporated under state law, like the Taxpayers in this case, is a corporation within the meaning of the Code. *See, e.g.*, *O'Neil v. United States*, 410 F.2d 888, 896 (6th Cir. 1969); *United States v. Empey*, 406 F.2d 157, 169–70 (10th Cir. 1969). Thus, the ordinary meaning of the word "corporation" extends to nonprofit entities.

The ordinary meaning of "corporation" is also consistent with its use in the Code. As the Sixth Circuit noted, there are "three basic types of corporations addressed in the Code: nonprofit corporations covered by subchapter F; certain for-profit corporations covered by subchapter C; and certain for-profit corporations covered by subchapter S." *Sixth Circuit.*, 833 F.3d at 676. This demonstrates that Congress used the generic definition of "corporation"—which includes both for-profit and nonprofit entities alike—in § 6621, because in each of these three subchapters, the drafters refer to the entities as "corporations." *Id.* For example, section 501, which addresses nonprofit entities that are generally exempt from federal income tax, still refers to those nonprofit entities as "corporations." *Id.* In fact, "[t]he word 'corporation' is used approximately fifty times throughout § 501." *Id.* Other sections of the Code, including sections 1381(a)(2)(A), 2522(b)(2), 12(1),

3121(h)(5), 1504(b)(1), and 1(h)(11)(B)(ii)(I), all treat these nonprofit entities as corporations and then specifically exclude them from coverage.[2]  *Id.*

The Taxpayers raise various counterarguments—none of which we find persuasive.  They contend that the *in pari materia* canon of construction and principles of symmetry require that we read § 6621(a)(1)'s provisions governing overpayments symmetrically with § 6621(c)(3)'s provisions governing underpayments.  As noted above, the flush language in subsection (a)(1) begins, "[t]o the extent that an overpayment of tax by a corporation for any taxable period (as defined in subsection (c)(3), applied by substituting 'overpayment' for 'underpayment')," and cross-references subsection (c)(3).  Subsection (c)(3), in turn, defines the term "large corporate underpayment" as "any underpayment of a tax by a *C corporation*."  *Id.* (emphasis added).  According to the Taxpayers, this definition limits the meaning of "corporation" in subsection (a)(1) to only C corporations.  In support of this argument, the Taxpayers rely on the Second Circuit's decision in *Exxon Mobil Corp. v. Commissioner*, 689 F.3d 191, 195 n.7 (2d Cir. 2012), in which, according to the Taxpayers, the Second Circuit held that interest rates on overpayments must be symmetrical with interest rates on underpayments.

But the Second Circuit in *Exxon* did not set out such a broad principle; rather, it acknowledged the opposite—that interest rates for underpayments are higher than interest

---

[2]    The Taxpayers counter that "the court ignored hundreds of instances in which the unadorned term [corporation] encompasses only for-profit entities, such as S or C corporations." Appellants' Br. at 11.  But the Taxpayers do not provide any such examples or citations and admit that they did not "undertake[] an exhaustive survey to determine the exact number of enactments or amendments . . . that included the term 'corporation.'" Appellants' Br. at 21.

rates for overpayments. *Id.* Regardless, principles of symmetry cannot override the plain text of the statute. The other circuits that have considered this argument agree. *See Sixth Circuit*, 833 F.3d at 678 ("If the (c)(3) definition of 'large corporate underpayment' returns to (a)(1), that means the statute says: 'To the extent that an overpayment of tax by a C corporation over $100,000 for any taxable period exceeds $10,000 . . . .' Because $100,000 always exceeds $10,000, that would make the dependent clause of the flush language in (a)(1) a needlessly confusing appendage. Congress deserves more credit than that."); *Second Circuit*, 809 F.3d at 92 ("By asking us to read 'C' into subsection (a)(1), [the taxpayer] seeks to have the rule of *in pari materia* (insofar as it applies at all) override another canon of interpretation, namely, the rule that '[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'" (alteration in original) (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983))); *Seventh Circuit*, 854 F.3d at 933 ("[T]he distinction between 'corporation' in subsection (a) and 'C corporation' in subparagraph (c)(3)(A) implies a different meaning. A presumption that a single word means the same thing throughout a statute goes together with a presumption that different words mean different things.").

In essence, the Taxpayers' argument amounts to one of policy—that a taxpayer should not have to pay a higher interest rate for underpayments of taxes than the government must pay for refunds on overpayments of taxes. While the outcome may seem unfair, it is one mandated by the text of the statute and thus can only be rectified by future amendments to the statutory text. *Azar v. Allina Health Servs.*, 139 S. Ct. 1804, 1815 (2019) ("That leads us to the government's final redoubt: a policy argument. But as the government knows well, courts aren't free to rewrite clear statutes under the banner of our own policy concerns.

If the government doesn't like Congress's notice-and-comment policy choices, it must take its complaints there.").

The Taxpayers also contend that the Kintner regulations, replaced by the modern regulations in 1997, support their contention that the term "corporation" does not contemplate nonprofit entities. As noted above, the Kintner regulations laid out certain characteristics common to corporations. Each of these characteristics, according to the Taxpayers, necessarily excluded nonprofit entities— "(i) [a]ssociates, (ii) an objective to carry on business and divide the gains therefrom, (iii) continuation of life, (iv) centralization of management, (v) liability for corporate debts limited to corporate property, and (vi) free transferability of interests." 26 C.F.R. § 301.7701-2(b)(1). The Taxpayers argue that this is because each of these characteristics appears to contemplate generation of profits and thus are necessarily directed to for-profit entities. Though these regulations are no longer in effect, the Taxpayers contend that they were the governing definition for "corporation" when Congress enacted § 6621 and thereby constitute the backdrop against which Congress legislated.

The Taxpayers may very well be correct that the characteristics listed in the Kintner regulations seem directed to for-profit entities. They ignore, however, that the purpose of these regulations was to aid in classifying entities that were not incorporated under state law, but had certain other characteristics common to corporations and were thus still subject to taxation under the Code. *Tenth Circuit*, 917 F.3d at 1226–27 (citing *Kintner v. United States*, 107 F. Supp. 976, 979 (D. Mont. 1952), *aff'd*, 216 F.2d 418 (9th Cir. 1954) (holding that an "association" under state law could also be treated as a corporation for purposes of the Code because the Code may be more expansive than categories enumerated under state law)); *Littriello v. United States*, 484 F.3d 372, 375 (6th Cir. 2007) ("The earlier regulations had been developed to aid in classifying business associations that were not incorporated under state

incorporation statutes but that had certain characteristics common to corporations and were thus subject to taxation as corporations under the federal tax code."). Here, the Taxpayers are incorporated under state law and thus would have been considered a corporation even in the era of the Kintner regulations.

Finally, the Taxpayers argue that the Notice supports its interpretation of the statute. As stated above, the IRS issued a notice on March 1, 2018, which "announces that the [Treasury Department] and the [IRS] intend to issue regulations providing guidance on the application of section 1061 [of the Internal Revenue Code . . . [and] further announces that the Treasury Department and the IRS intend that those regulations will provide that the term 'corporation' for purposes of section 1061(c)(4)(A) does not include an S corporation." J.A. at 169. The Taxpayers characterize this Notice as "formal administrative guidance" that "holds that the term 'corporation' does not . . . encompass S corporations but instead means 'C corporation.'" Appellant's Br. at 39. According to the Taxpayers, the notice shows that "corporation" does not have a broad meaning.

But, the Notice's exclusion of an S corporation from the definition of "corporation" would be "for purposes of" § 1061; the Notice does not purport to alter the meaning of "corporation" as it appears in § 6621. While we question whether the regulations described in the Notice, if codified, would be proper in view of the government's position in this case that the Code incorporates the broad, common law meaning of "corporation," we leave that issue for another day. Indeed, the Notice is just that—a Notice regarding regulations that do not yet, and may never, exist. The Claims Court declined "to express any views on whether the approach of some as-yet-to-be issued regulations is inconsistent with the government's arguments in this case." J.A. 9. We do the same here.

## B.  The Motion for Class Certification is Moot

The Taxpayers also argue that the Claims Court erred in denying its motion for class certification as moot.  But we addressed this issue in *Greenlee County v. United States*, 487 F.3d 871 (Fed. Cir. 2007).  There, we noted that this court has "repeatedly found on appeal that issues related to class certification were moot in light of our resolution against the plaintiff of a motion to dismiss or for summary judgment."  *Id.* at 880 (citing *Christopher Vill., L.P. v. United States*, 360 F.3d 1319, 1337–38 (Fed. Cir. 2004); *Gollehon Farming v. United States*, 207 F.3d 1373, 1382 (Fed. Cir. 2000), *overruled on other grounds by Fisher v. United States*, 402 F.3d 1167 (Fed. Cir. 2005); *Greenbrier v. United States,* 193 F.3d 1348, 1360 (Fed. Cir. 1999)).  Accordingly, we saw no reason to apply a different rule when it is the Claims Court that finds the issue moot.  *Id.*

We also noted that "[n]othing in the Supreme Court's decision in *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974), which held that the merits of the plaintiff's claim should not be considered in ruling on class certification[,] requires that class certification be addressed before ruling on a motion to dismiss."  *Id.*  We reasoned that the "weight of authority after *Eisen* supports our conclusion that it was within the discretion of the Court of Federal Claims to find the class certification motion moot."  *Id.* at 880–81.  (citing *Kehoe v. Fid. Fed. Bank & Tr.*, 421 F.3d 1209, 1211 n.1 (11th Cir. 2005) (finding no error in grant of summary judgment without resolving class certification); *Curtin v. United Airlines, Inc.*, 275 F.3d 88, 92 (D.C. Cir. 2001) (same); *Schweizer v. Trans Union Corp.*, 136 F.3d 233, 239 (2d Cir. 1998) ("There is nothing in [Fed. R. Civ. P.] 23 [which governs class certification] which precludes the court from examining the merits of plaintiff's claims on a proper Rule 12 motion to dismiss or Rule 56 motion for summary judgment simply because such a motion precedes resolution of the issue of class certification.").  Thus, we

find that the Claims Court did not err in denying the Tax-payers' motion for class certification as moot.

## CONCLUSION

For the reasons stated above, we affirm the decision of the Claims Court.

**AFFIRMED**

## COSTS

Costs to appellee.