**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 7, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

<u>PUBLISH</u>

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

WICHITA CENTER FOR
GRADUATE MEDICAL
EDUCATION, INC., on behalf of the
themselves and all other taxpayers
similarly situated,

        Plaintiff - Appellant,

v.

UNITED STATES OF AMERICA,

        Defendant - Appellee.

No. 18-3016

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**(D.C. NO. 6:16-CV-01054-JTM-KGG)**

---

Thomas D. Sykes, The Law Offices of Thomas D. Sykes LLC, Lake Forest,
Illinois, for Appellant.

Deborah K. Snyder, Attorney (Richard E. Zuckerman, Principal Deputy Assistant
Attorney General, and Richard Farber, Attorney, with her on the brief), Tax
Division, Department of Justice, Washington, D.C., for Appellee.

---

Before **TYMKOVICH**, Chief Judge, **HOLMES**, and **PHILLIPS**, Circuit Judges.

---

**TYMKOVICH**, Chief Judge.

---

Wichita Center of Graduate Medical Education is a federally qualified charitable organization incorporated under the laws of Kansas. In 2010, the Internal Revenue Service issued a refund to the Center on overpaid taxes along with incorrectly calculated interest on the refund. The IRS then sought repayment of part of the interest. Under the Internal Revenue Code, corporate taxpayers receive a lower refund interest rate than other taxpayers such as individuals or partnerships. 26 U.S.C. § 6621(a)(1). The Center claims it is not a corporation for purposes of this section and it should be entitled to the higher interest rate applicable to non-corporations.

We affirm the district court's finding that the Center is a corporation and is subject to the lower interest rate. As we explain, the statutory text compels the conclusion that the Center—even though it does not issue stock or generate profit—must be treated as an ordinary corporation for purposes of the refund statute.[1]

## I. Background

Wichita Center offers training programs for medical students alongside hospital partners. In 2010, after the IRS determined medical students were not subject to FICA taxes, the IRS refunded to the Center prior FICA tax payments in

---

[1] Appellant Wichita Center filed an unopposed motion for leave to file an appendix on June 11, 2018, and a supplemental motion for leave to file an appendix on June 18, 2018. We grant both motions.

the amount of $5.4 million.  In 2012, the IRS also remitted $4.7 million in interest earned on the overpaid FICA taxes to the Center.  The IRS later determined it had erroneously repaid the interest at the higher statutory rate and demanded repayment of $2.3 million to account for the difference.  The Center complied with the IRS, but then filed the present action in district court seeking recovery of the $2.3 million payment.

The Center argues as a non-stock, not-for-profit entity, it is not a corporation for purposes of 26 U.S.C. § 6621(a)(1) and thus deserves the higher interest rate.  The Center contends the applicable regulations as well as traditional canons of statutory interpretation support this conclusion.  This argument is not new–in fact, the same arguments have been made, and rejected, in the Second Circuit, the Sixth Circuit, the Seventh Circuit, and the Court of Federal Claims. The district court in this case agreed with the other circuits, holding that the word corporation is all-encompassing, and therefore includes non-stock, not-for-profit entities.

## II.  Analysis

Wichita Center argues § 6621(a)(1) should be interpreted to allow non-stock, not-for-profit entities to receive a higher overpayment refund rate reserved for individuals and others.  The Center argues the text is ambiguous and requires

us to look to the statute as a whole as well as other contextual clues to understand the limited applicability of the higher corporate rate.

Section 6621(a)(1) provides the interest rates applicable to overpayments of taxes, including the employer-portion FICA taxes at issue here. The provision identifies two types of taxpayers—(1) corporations, and (2) all other taxpayers—and treats them differently for purposes of overpayment refunds:

> (1) OVERPAYMENT RATE The overpayment rate established under this section shall be the sum of–
>
> (A) the Federal short-term rate determined under subsection (b), plus
>
> (B) 3 percentage points (2 percentage points in the case of a *corporation*).
>
> To the extent that an overpayment of tax by a *corporation* for any taxable period (as defined in subsection (c)(3), applied by substituting "overpayment" for "underpayment") exceeds $10,000, subparagraph (B) shall be applied by substituting "0.5 percentage point" for "2 percentage points".

26 U.S.C. § 6621(a)(1) (emphasis added). Thus, corporations that overpay taxes will ordinarily receive the federal short-term rate plus 2% interest on the amount overpaid, whereas other taxpayers will receive the federal short-term rate plus 3%

interest.  If the overpayment exceeds $10,000, then a corporation receives even less of a benefit as it only receives the federal short-term rate plus 0.5% interest.[2]

As always, we start with the plain meaning of the text.  *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997) ("[The] first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case.").  While § 6621 does not contain a definition, the Internal Revenue Code has a definitions section that applies broadly across the Code: "[t]he term 'corporation' includes associations, joint-

---

[2] To summarize § 6621, the following are the applicable interest rates for different entities:

| | Interest Rate for Overpayment | Interest Rate for Underpayment |
|---|---|---|
| **Corporations** | Federal short-term rate + 2%, but federal short-term rate + 0.5% if overpayment exceeded $10,000 in the taxable period | Federal short-term rate + 3% |
| **C Corporations** | Federal short-term rate + 2%, but federal short-term rate + 0.5% if overpayment exceeded $10,000 in the taxable period | Federal short-term rate + 3%, but federal short-term rate + 5% if underpayment exceeds $100,000 in the taxable period |
| **Individuals/Other Entities** | Federal short-term rate + 3% | Federal short-term rate + 3% |

stock companies, and insurance companies." 26 U.S.C. § 7701(a)(3). The word "includes" indicates that the enumerated entities are not exclusive but only illustrative of a broader application of the word "corporation." *See United States v. Empey*, 406 F.2d 157, 168 (10th Cir. 1969); *see also* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts*, 132–33 (2012). The definitions in § 7701 apply to words "used in [the Internal Revenue Code], where not otherwise distinctly expressed or manifestly incompatible with the intent thereof." 26 U.S.C. § 7701(a). Because § 6621(a)(1) does not distinctly express an alternative definition for the word "corporation" as required by the statute, § 7701 applies.

Even without this clear statutory guidance, we would reach the same result. The legal definition of the term corporation has historically included non-profit entities incorporated under state law. One of the earliest, seminal Supreme Court cases examining corporations defined them as "an artificial being, invisible, intangible, and existing only in contemplation of law. Being the mere creature of law, [a corporation] possesses only those properties which the charter of its creation confers upon it, either expressly, or as incidental to its very existence." *Trs. of Dartmouth Coll. v. Woodward*, 17 U.S. 518, 636 (1819). Notably, the Supreme Court went on to find that the "corporation in question [Dartmouth

-6-

College] . . . is a private charity," thereby confirming that charitable organizations fall within the historical and ordinary meaning of "corporation." *Id.* at 562.

The *Dartmouth College* definition of "corporation," which has been widely accepted in judicial decisions ever since, is further supported by contemporaneous dictionary definitions of the word. None of the traditional definitions consider the type of corporation as important for purposes of analysis. For example, the Oxford English Dictionary defines "corporation" as "[a] body corporate legally authorized to act as a single individual; an artificial person created by a royal charter, prescription, or act of the legislature, and having authority to preserve certain rights in perpetual succession." *Oxford English Dictionary* (2d ed. online 2018). Black's Law Dictionary defines it as "[a]n entity (usu. a business) having authority under law to act as a single person." *Black's Law Dictionary* (10th ed. 2014); *see also Webster's New International Dictionary* 596 (2d ed. 1934). The definition of corporation shows that, despite Wichita Center's argument that the type of entity matters, an organization's status as a corporation is a result of its incorporation under a state's laws and not its status as a business versus a non-profit entity.

When searching for statutory meaning we also examine the context and structure of the statutory scheme in which a word is used, looking at the statute as a whole. *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281 (1988). Throughout the

Code, Congress broadly used the term corporation, although there are specific types of corporations, ranging from non-profit to "S" to "C" corporations. *See, e.g.*, 26 U.S.C. 1361(a); 26 U.S.C. 501(c)(3). But all of these entities are corporations for purposes of the Code, and nothing in § 6621 excludes non-stock, not-for-profit entities.

Every court to consider this argument has concluded that for purposes of the refund statute, corporations include non-stock, not-for-profit corporations. *See Medical College of Wisconsin Affiliated Hospitals, Inc. v. United States*, 854 F.3d 930 (7th Cir. 2017); *United States v. Detroit Medical Center*, 833 F.3d 671 (6th Cir. 2016); *Maimonides Medical Center v. United States*, 809 F.3d 85 (2d Cir. 2015); *see also Charleston Area Medical Center, Inc. v. United States*, 138 Fed. Cl. 626 (Fed. Cl. 2018).

In the face of these obstacles, the Center argues the statutory scheme carves out an exception for similar corporations. First, it argues we must construe § 6621 to avoid creating a lack of internal symmetry between subsections (a)(1) and (c)(3). Subsection (a)(1) provides a decreased interest rate owed by the IRS to corporations for overpayments exceeding $10,000. Thus, corporations do not receive the same benefit as, for example, an individual who receives a standard interest rate for overpayments in any amount. In comparison, subsection (c)(3) provides an increased interest rate for large corporate underpayments–a term

explicitly defined in subsection (c)(3)(A) as "underpayment of a tax by a C corporation for any taxable period if the amount of such underpayment for such period exceeds $100,000." That is, if the amount underpaid exceeds $100,000, only C corporations are further punished by having to pay a higher interest rate. All other corporations, and individuals, are not subject to this higher rate. The clear difference between subsections (a)(1) and (c)(3)(A) is the type of entity that is affected by a non-standard interest rate.

The Center takes issue with this statutory scheme. According to the Center, "the type of corporation specified by (a)(1) is the type of corporation embedded in and specified by (c)(3): a C corporation." *Detroit Medical Center*, 833 F.3d at 677 (internal quotations omitted). Because only C corporations are subject to higher interest rates for underpayments, it follows that only C corporations should be subject to lower interest rates for overpayments. To the Center, it seems incongruous that only C corporations are subject to a different interest rate for underpayments, but that all corporations are subject to a different rate for overpayments.

But this is the statutory scheme Congress designed. The term C corporation is only used once in the statute, and it is used in a very specific manner: to designate a different interest rate for C corporations that *underpay* in excess of $100,000. The cross-reference in subsection (a)(1) to subsection (c)(3)(B) does

not change this fact. Subsection (a)(1) specifies that for corporate overpayments exceeding $10,000 in a taxable period, a corporation receives a lower interest rate than it would if the corporation were an individual or the corporation did not overpay by more than $10,000. The text directs the reader to look at (c)(3)(B) for the definition of taxable period. Because the definition for taxable period only refers to underpayments, the reader is further instructed by (a)(1) to substitute the word "overpayment" for "underpayment" in (c)(3)(B). Taxable period, therefore, means the same thing for overpayments and underpayments. Nowhere in (a)(1) does it refer to (c)(3)(A) where the term C corporation is used. The only relationship between (a)(1) and (c)(3)(A) is that both sections use the phrase "taxable period" as defined in (c)(3)(B).

Just because "corporation" is qualified by the modifier "C" in (c)(3)(A) does not mean the word "corporation" is implicitly qualified by the same modifier throughout the statute. *See Russello v. United States*, 464 U.S. 16, 23 (1983) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."). While one is left to wonder why non-profit entities that overpay in excess of $10,000 in a taxable period receive a lower interest rate than, for example, a wealthy individual in the same position, we are not to judge the prudence of the statutory

-10-

scheme. Rather, we are to decipher the meaning of the statute based on the words Congress intentionally included and excluded. In this case, Congress used the word "corporation" generally, signaling that it intended for corporations of any kind, including non-stock and not-for-profit corporations, to receive a lower interest rate on tax overpayments.

Wichita Center also argues the interpretive canon of *in pari materia*, which means "similar language contained within the same section of a statute must be accorded a consistent meaning." *Nat'l Credit Union Admin. v. First Nat'l Bank & Trust Co.*, 522 U.S. 479, 401 (1998). Again, the Center focuses on the fact that subsection (c)(3)(A) uses the term C corporation and argues that under this canon of construction, the term C corporation should be used throughout the section. But in asking us to treat the word corporation as meaning C corporation in § 6621, the Center puts § 6621 at odds with the rest of the Internal Revenue Code. For example, in § 501(c)(3), the IRS uses the word corporation to define generally non-profit organizations, a definition at odds with what the Center asks us to accept.

Finally, the Center persistently argues that regulations enacted by the IRS in 1960 and later repealed in 1996 support its interpretation. The so-called Kintner Regulations were a set of guidelines designed to help classify unincorporated entities for taxation purposes. *See Empey*, 406 F.2d at 168; *see*

*also Littriello v. United States*, 484 F.3d 372, 375 (6th Cir. 2007). The Kintner

Regulations list certain characteristics to look for in an entity to determine

whether it should be taxed as a corporation. These regulations, however, were

only useful to the extent that an association or similar entity was *not incorporated*

under state laws but was still taxed as a corporation. *See Kintner v. United*

*States*, 107 F. Supp. 976, 979 (D. Mont. 1952), *aff'd*, 216 F.2d 418 (9th Cir.

1954).

The Kintner Regulations thus have no relevance to our inquiry. First, even

if the Kintner Regulations were still in effect, they would not apply because the

Center is incorporated under the laws of Kansas. There is no need to assist the

IRS in classifying the Center for tax purposes because it is already classified as a

corporation under state law. Second, a court only looks to agency interpretations

to understand the meaning of a statute when the statutory text is unclear. *See*

*Chevron, U.S.A, Inc. v. Nat'l Res. Def. Council, Inc*, 467 U.S. 837, 842–43

(1984). The word corporation here is not ambiguous. Thus, we need not consider

the Kintner Regulations despite the Center's insistence that they are persuasive.[3]

---

[3] The Center submitted supplemental authority after oral argument. The first document is a Discussion Draft of a bill issued by the House Committee on Ways and Means. The second document was a "Blue Book" commentary on the Tax Cut and Jobs Act issued by the House and Senate's Joint Committee on Taxation. Both documents have no relevance to the issue presented in this case. These documents are subsequent legislative history on an unrelated statute.

Based on our own analysis, as well as the decisions from the other circuits, we conclude the Center is a corporation subject to the lower interest rate on overpaid taxes provided in 26 U.S.C. 6621(a)(1).

### III.  Conclusion

For these reasons, we affirm the district court.