**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 30, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

**<u>PUBLISH</u>**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

SAVE THE COLORADO, a
Colorado nonprofit corporation;
THE ENVIRONMENTAL GROUP, a
Colorado nonprofit corporation;
WILDEARTH GUARDIANS, a
nonprofit corporation; LIVING
RIVERS, a nonprofit corporation;
WATERKEEPER ALLIANCE, a
nonprofit corporation; SIERRA
CLUB, a nonprofit corporation,

      Petitioners - Appellants,

v.

LIEUTENANT GENERAL SCOTT
A. SPELLMON, in his official
capacity as the Chief of the U.S.
Army Corps of Engineers; DEBRA
HAALAND, in her official capacity
as Secretary of the Interior;
MARTHA WILLIAMS, in her
official capacity as the Principal
Deputy Director, exercising the
authority of Acting Director of the
U.S. Fish and Wildlife Service,

      Respondents - Appellees,

and

CITY AND COUNTY OF DENVER,
acting by and through its Board of
Water Commissioners (Denver
Water),

No. 21-1155

Intervenor/Respondent -
Appellee.

_____

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:18-CV-03258-CMA)**

_____

William S. Eubanks II (Matthew R. Arnold, with him on the briefs), Eubanks & Associates, PLLC, Washington, DC, for the Petitioners-Appellants.

Justin D. Heminger, Attorney, U.S. Department of Justice, Environment and Natural Resources Division (Todd Kim, Assistant Attorney General, U.S. Department of Justice, Environment and Natural Resources Division; Sara E. Costello and Ellen J. Durkee, Attorneys; Milton Boyd and Melanie Casner, Attorneys, U.S. Army Corps of Engineers; Kristen C. Guerriero, Attorney, U.S. Department of the Interior, with him on the briefs), Washington, DC, for the Respondents-Appellees.

Amanda Shafer Berman, Crowell & Moring LLP (David Y. Chung and Elizabeth B. Dawson, Crowell & Moring LLP; Jessica R. Brody and Nicholas A. DiMascio, Denver Water, Office of the General Counsel, with her on the briefs), Washington, DC, for the Intervenor-Respondent-Appellee.

_____

Before **BACHARACH**, **MURPHY**, and **CARSON**, Circuit Judges.

_____

**BACHARACH**, Circuit Judge.

_____

This case arises out of a regulatory dispute involving a hydroelectric project. The project aimed to boost a municipality's water supply. To obtain more water, the municipality proposed to raise a local dam and expand a nearby reservoir. But implementation of the proposal would require amendment of the municipality's license with the Federal Energy

2

Regulatory Commission, which was entrusted with authorization of all hydroelectric projects.

To raise the dam and expand the reservoir, the municipality would need to discharge fill material into the surrounding waters. These discharges would require a permit from the U.S. Army Corps of Engineers. So the municipality applied not only to the Federal Energy Regulatory Commission for amendment of the license, but also to the Army Corps of Engineers for a permit allowing discharge of fill materials into the surrounding waters.

The Corps was the first to act, granting a discharge permit to the municipality. A group of conservation organizations challenged the Corps' decision by petitioning in federal district court. While the petition was pending, the Federal Energy Regulatory Commission allowed amendment of the municipality's license to raise the dam and expand the reservoir.

The Commission's amendment of the municipality's license triggered a jurisdictional question. Federal courts of appeals have exclusive jurisdiction over petitions challenging decisions made by the Federal Energy Regulatory Commission. 16 U.S.C. § 825*l*(b). Does this jurisdiction extend to challenges against the Corps' issuance of a permit to allow discharges required for the modification of a hydroelectric project licensed by the Federal Energy Regulatory Commission?

3

The district court answered *yes*, but we disagree. The conservation organizations are challenging the *Corps'* issuance of a *permit*, not the *Commission*'s amendment of a *license*. So the statute didn't limit jurisdiction to the court of appeals.

**1.    The municipality obtains a discharge permit from the Corps.**

The Clean Water Act allows the Corps to issue permits for the discharge of dredge or fill material into navigable waters. Clean Water Act of 1972 § 404, 33 U.S.C. § 1344(a). To raise the dam and expand the reservoir, the municipality needed to put concrete in the dam's downstream and inundate nearby wetlands. So the municipality applied to the Corps for a permit to discharge material into the surrounding waters.

To issue the permit, the Corps had to comply with the National Environmental Policy Act. *See, e.g.*, *Hillsdale Env't Loss Prevention, Inc. v. U.S. Army Corps of Eng'rs*, 702 F.3d 1156, 1172–82 (10th Cir. 2012) (discussing the validity of the Corps' analysis under the National Environmental Policy Act when issuing a discharge permit). This Act requires federal agencies to prepare environmental impact statements for "major [f]ederal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C). Given this requirement, the Corps issued an environmental impact statement about the likely environmental consequences of discharges into the nearby waters.

4

The Corps also needed to comply with the Endangered Species Act, which requires federal agencies to protect species that are endangered or threatened. 16 U.S.C. § 1536(a)(2). To comply with the Act, the Corps consulted the U.S. Fish and Wildlife Service. These consultations led the Service to issue a biological opinion involving the *green lineage* cutthroat trout, viewing it as part of a larger protected species of *greenback* cutthroat trout. Based on this view, the Service determined that the project wouldn't endanger or threaten the green lineage cutthroat trout in the project area. But the Service changed its view four years later, viewing the green lineage cutthroat trout as a separate species that wasn't endangered or threatened. The change led the Service to (1) determine that its consultation was unnecessary and (2) withdraw its earlier biological opinion.

The Corps later granted a discharge permit.

**2.    The municipality applies to the Federal Energy Regulatory Commission for amendment of the license.**

The municipality needed not just a discharge permit from the Corps but also amendment of its license from the Federal Energy Regulatory Commission. *See* 16 U.S.C. § 797(e). The Commission cooperated with the Corps and the Service to ensure compliance with the statutory requirements governing the project. This cooperation included

- helping the Corps to draft an environmental impact statement and

5

- participating in consultations with the Fish and Wildlife Service about possible effects on endangered or threatened species.

The Commission not only worked with other agencies but also issued its own supplemental environmental assessment to comply with the National Environmental Policy Act. *See* 40 C.F.R. § 1501.3. In this assessment, the Commission concluded that amendment of the municipality's license would not result in significant environmental damage.

After the Commission issued its supplemental environmental assessment, the conservation organizations moved to intervene in the Commission proceedings. When this motion was denied, the conservation organizations sought rehearing. The Commission denied rehearing, but noted that its proceeding would not affect the conservation organizations' ability to challenge the Corps' actions.

**3.    Challenging the Corps' discharge permit, the conservation organizations sue in federal district court rather than in a federal court of appeals.**

After the Commission denied rehearing, the conservation organizations petitioned the federal district court for review of the Corps' issuance of a discharge permit. In the petition, the conservation organizations claimed that the Corps and Service had violated the National Environmental Policy Act, the Clean Water Act, and the Endangered

6

Species Act; each claim also asserted a violation of the Administrative

Procedure Act. The municipality intervened to side with the Corps and

Service.

**4.    The district court orders dismissal for lack of subject-matter jurisdiction, concluding that jurisdiction existed only in the federal court of appeals.**

After the petition had been pending in the district court for nearly

two years, the Commission allowed the municipality to amend its license.

This decision led the Corps, Service, and municipality to seek dismissal of

the petition, arguing that the federal courts of appeals had exclusive

jurisdiction over the petition. The district court agreed and ordered

dismissal, prompting the conservation organizations to appeal.

**5.    The claim does not fit within the statutory provision granting jurisdiction to the court of appeals.**

In their petition, the conservation organizations challenged the

Corps' issuance of a discharge permit, not the Commission's amendment of

the municipality's license. Despite this framing of the challenge, the

district court concluded that jurisdiction lay exclusively in the federal

courts of appeals.

We conduct de novo review. *Trackwell v. U.S. Gov't*, 472 F.3d 1242,

1243 (10th Cir. 2007).[1] Through de novo review, we conclude that the

---

[1]    The Corps, Service, and municipality urge us to apply the clear-error standard to the district court's factual findings. But when administrative decisions are involved, we don't defer to the district court's conclusions.

7

district court misapplied the jurisdictional statute. The statute provides courts of appeals with exclusive jurisdiction over issues decided by the Commission itself. Here, though, the claims involve issues decided by the Army Corps of Engineers and the Fish and Wildlife Service, not the Federal Energy Regulatory Commission.

Generally, a party challenging an agency action must petition in federal district court. *See Watts v. SEC*, 482 F.3d 501, 505 (D.C. Cir. 2007) (stating that "the 'normal default rule'" requires parties challenging agency action to start in federal district court rather than in a federal court of appeals (quoting *Int'l Bhd. of Teamsters v. Pena*, 17 F.3d 1478, 1481 (D.C. Cir. 1994))). But some statutes create exceptions by allowing the filing of a petition in a court of appeals. *Id.*

The Corps, Service, and municipality invoke such an exception, pointing to the Federal Power Act, which provides exclusive jurisdiction to the courts of appeals in challenges to orders issued by the Federal Energy

---

*See Webb v. Hodel*, 878 F.2d 1252, 1254 (10th Cir. 1989) ("On appeal from a district court's review of an agency's action, the appellate court 'must render an independent decision on the basis of the same administrative record as that before the district court; the identical standard of review is employed at both levels; and once appealed, the district court decision is accorded no particular deference.'" (quoting *Brown v. U.S. Dep't of Interior*, 679 F.2d 747, 748–49 (8th Cir. 1982))); *see also Weight Loss Healthcare Ctrs. of Am., Inc. v. Off. of Pers. Mgmt.*, 655 F.3d 1202, 1204 (10th Cir. 2011) (stating that "we accord no deference to the district court's decision" when we are "reviewing agency action" (quoting *Lee v. U.S. Air Force*, 354 F.3d 1229, 1236 (10th Cir. 2004))).

Regulatory Commission. 16 U.S.C. § 825*l*(b). We must determine the applicability of this exception.

### A.    Statutory Text

We start with the text of the Federal Power Act, which addresses only orders issued by the Commission itself:

> Any party to a proceeding . . . aggrieved *by an order issued by the [Federal Energy Regulatory] Commission* . . . may obtain *a review of such order* in the United States court of appeals for any circuit wherein the licensee or public utility to which the order relates is located or has its principal place of business, or in the United States Court of Appeals for the District of Columbia, by filing in such court . . . a written petition praying that *the order of the Commission* be modified or set aside in whole or in part. . . . Upon the filing of such petition such court shall have jurisdiction, which upon the filing of the record with it shall be exclusive, to *affirm, modify, or set aside such order* in whole or in part.

16 U.S.C. § 825*l*(b) (emphasis added); *see Wichita Ctr. for Graduate Med. Educ., Inc. v. United States*, 917 F.3d 1221, 1224 (10th Cir. 2019) ("[W]e start with the plain meaning of the text.").

We are guided not only by the statutory text but also by the Supreme Court's interpretation. In *City of Tacoma v. Taxpayers of Tacoma*, 357 U.S. 320 (1958), the Supreme Court interpreted the statute to cover not only orders issued by the Commission but also "all issues inhering in the controversy." 357 U.S. at 336. What did the Supreme Court mean by the phrase "all issues inhering in the controversy"? The answer requires consideration of the factual context in *City of Tacoma*. *See* Bryan A.

9

Garner, et al., *The Law of Judicial Precedent* 80 (2016) ("The language of a judicial decision must be interpreted with reference to the circumstances of the particular case and the question under consideration.").

There a city had applied to the Federal Energy Regulatory Commission for a license to build a dam. *City of Tacoma*, 357 U.S. at 323. In the licensing proceeding, the state objected to the city's request for a license on the ground that the dam would destroy the state's fish hatchery. But the Commission overruled the objection and granted the license. *Id.* at 325–27. The state sued the city in state court, challenging the scope of the city's rights under the Commission's license. *Id.* at 331.

The Supreme Court disallowed the litigation in state court, concluding that the federal court of appeals had exclusive jurisdiction over "all issues inhering in the controversy." *Id.* at 336. The Supreme Court reasoned that the applicable statute provided exclusive jurisdiction in the court of appeals for objections involving the issuance of the license and the scope of its terms. *Id.* Because the scope of the license's terms "inher[ed] in the controversy," the state had to bring its challenge in the federal court of appeals. *Id.* at 338–39.

Disregarding the context of *City of Tacoma*, the Corps, Service, and municipality point to the breadth of the phrase "inhering in the controversy." We've previously interpreted the language as expansive. *Williams Nat. Gas Co. v. City of Okla. City*, 890 F.2d 255, 262 (10th Cir.

1989). Recently, however, the Supreme Court has more narrowly interpreted the scope of its holding in *City of Tacoma*. In *PennEast Pipeline Co. v. New Jersey*, 141 S. Ct. 2244 (2021), the Supreme Court characterized its holding in *City of Tacoma* as recognizing the court of appeals' exclusive jurisdiction over the state's "argu[ment] that a licensee could not exercise the rights granted to it by the license itself." *PennEast Pipeline Co. v. New Jersey*, 141 S. Ct. 2244, 2254 (2021).

The Supreme Court's language thus reflects the statutory text, limiting the provision on exclusive jurisdiction to challenges involving the Commission's order itself. 16 U.S.C. § 825*l*(b). So the provision on exclusive jurisdiction covers all issues "inhering in a controversy over [a Federal Energy Regulatory Commission] *order*, where one party alleges that it was *aggrieved by the order*."[2] *Merritt v. Shuttle, Inc.*, 245 F.3d 182, 188 (2d Cir. 2001) (Sotomayor, J.) (emphasis in original).

Following this standard, courts have distinguished between collateral attacks on Commission orders—which are subject to exclusive jurisdiction in the courts of appeals—and challenges that can be asserted in district

---

[2]    Citing *City of Tacoma*, the district court held that any cause of action "'inhering in the controversy' *related to a [Commission] order*" would be subject to exclusive review under the Federal Power Act § 313(b). Pet. App'x at 141 (quoting *City of Tacoma v. Taxpayers of Tacoma*, 357 U.S. 320, 336 (1958)) (emphasis added). But nothing in the statute or *City of Tacoma* would suggest exclusive jurisdiction in the court of appeals whenever a cause of action "relates" in some way to a Commission license.

11

courts. To determine whether a challenge constitutes a collateral attack on an order by the Federal Energy Regulatory Commission, we consider whether a successful challenge would require the court to modify or set aside the Commission order. *PennEast Pipeline Co. v. New Jersey*, 141 S. Ct. 2244, 2254 (2021).[3]

The Corps and Service urge a broad reading of the "inhering in the controversy" standard, arguing that the statute restricts jurisdiction to the courts of appeals whenever the challenge is sufficiently related to an order by the Federal Energy Regulatory Commission.

This approach would require us to disregard the statutory text and ignore the differences between the issues decided by the Corps and the Commission. The statute provides exclusive jurisdiction in the court of appeals only for claims attacking a Commission order. *See Mokdad v. Lynch*, 804 F.3d 807, 810 (6th Cir. 2015) (noting that a direct-review provision generally extends only to "*claims* inescapably intertwined with an order by a covered agency," not "*orders* [by non-covered agencies] that

---

[3]    Some circuits similarly use an "inescapably intertwined" test, requiring direct review in the court of appeals only when a claim is "inescapably intertwined" with a covered agency's order. *See, e.g.*, *Merritt v. Shuttle, Inc.*, 245 F.3d 182, 189 (2d Cir. 2001). Under this test, a claim is considered "inescapably intertwined" with an order when the claim "attacks the matters decided by [that] order." *Id.* We need not address whether the district court had jurisdiction under the "inescapably intertwined" test because the district court had jurisdiction under the test stated in *PennEast*.

are intertwined with orders of agencies that fall under the special review

statute" (emphasis in original)).

Given the statutory test, courts have applied the restriction on

jurisdiction to other agencies' orders only when they

- were triggered by the Federal Power Act or the Commission's obligation under another statute, *see, e.g.*, *Nat'l Parks & Conservation Ass'n v. FAA*, 998 F.2d 1523, 1527–28 (10th Cir. 1993) (holding that the Federal Aviation Act's exclusive-review provision applied to action "taken under the [Federal Aviation Act] and in regard to [the Federal Aviation Administration's] basic mission" of regulating the nation's air travel system),

- lacked significance outside the Commission's process, *see, e.g.*, *Cal. Save Our Streams Council, Inc. v. Yeutter*, 887 F.2d 908, 912 (9th Cir. 1989) (noting that the conditions imposed on the license by the Forest Service had no significance outside the Commission's licensing process), or

- were incorporated as enforceable terms into the Commission's license, *see, e.g.*, *Shafer & Freeman Lakes Envt. Conservation Corp. v. FERC*, 992 F.3d 1071, 1087 (D.C. Cir. 2021) (Commission incorporated terms from the Fish and Wildlife Service as enforceable conditions of a license); *Me. Council of the Atl. Salmon Fed'n v. Nat'l Marine Fisheries Serv.*, 858 F.3d 690, 693 (1st Cir. 2017) (Souter, J.) (Commission's orders incorporated the terms of the National Marine Fisheries Service's biological opinions).

These cases don't apply here because

- the actions by the Corps and Service were triggered by the Clean Water Act and the Corps' obligations under the National Environmental Policy Act and Endangered Species Act—not the Federal Power Act or the Federal Energy Regulatory Commission's obligations under these statutes,

13

- the Corps and Service allowed the municipality to discharge fill into the nearby waters with or without Commission approval of the amended license, and

- the conditions imposed by the Corps and Service weren't enforceable terms under the Commission's amended license.

The Corps and Service urge an expansive interpretation of the direct-review provision, relying largely on two Tenth Circuit cases addressing a similar jurisdictional statute for challenges to decisions by the Federal Aviation Administration: *National Parks & Conservation Ass'n v. Federal Aviation Administration*, 998 F.2d 1523 (10th Cir. 1993), and *Custer County Action Ass'n v. Garvey*, 256 F.3d 1024 (10th Cir. 2001). In our view, however, these opinions provide little guidance here.

In *National Parks*, we considered the effect of a statute providing the court of appeals with exclusive jurisdiction over a decision by the Federal Aviation Administration. There the statute triggered the Bureau of Land Management's decisions. *Id.* at 1528. We thus applied the jurisdictional statute, holding that the Bureau's actions had constituted "an important ingredient" of the Federal Aviation Administration's decision. *Id.* at 1528–29 (quoting *Cal. Save Our Streams Council, Inc. v. Yeutter*, 887 F.2d 908, 912 (9th Cir. 1989)).

Here, though, the Corps and Service acted based on their obligations under the Clean Water Act, National Environmental Policy Act, and Endangered Species Act; and those statutes don't restrict jurisdiction to the

14

court of appeals. The jurisdictional restriction came from the Federal Power Act, which the Corps and Service never had occasion to address.

The municipality also relies on *Custer County Action Ass'n v. Garvey*, 256 F.3d 1024 (10th Cir. 2001). There we applied the federal aviation jurisdictional statute to a decision and environmental impact statement issued by the Air National Guard rather than the Federal Aviation Administration. *Id.* at 1027. But the parties in *Custer* did not dispute jurisdiction. And there the Federal Aviation Administration's decision had expressly "incorporated" and "adopted" the Air National Guard's decision and environmental impact statement. *Id.* at 1027, 1034. Here, however, the Commission did not incorporate the decisions by the Corps or Service. So under the statutory text, the federal court of appeals lacked exclusive jurisdiction.

## B. Reliance on Legislative History, Canons, and Policy Arguments

All of the parties stray beyond the statutory text. For example, the conservation organizations invoke policy arguments and legislative history. And the Corps and Service invoke canons of construction involving specific grants of jurisdiction, resolution of ambiguities in favor of jurisdictional grants in the court of appeals, and disfavor of bifurcation. But these principles would apply only if the jurisdictional statute were ambiguous. *See Sunshine Haven Nursing Operations, LLC v. U.S. Dep't of*

*Health & Hum. Servs., Ctrs. for Medicare & Medicaid Servs.*, 742 F.3d 1239, 1250 (10th Cir. 2014) (policy arguments); *United States v. O'Brien*, 686 F.2d 850, 852 (10th Cir. 1982) (legislative history); *Nat'l Parks & Conservation Ass'n v. FAA*, 998 F.2d 1523, 1527 (10th Cir. 1993) (canon favoring review by the court of appeals); *Conn. Light & Power Co. v. Fed. Power Comm'n*, 324 U.S. 515, 527 (1945) (specific grants of jurisdiction).

No one suggests that the jurisdictional statute itself is ambiguous, and it isn't. The statute unambiguously covers only orders by the Commission itself. 16 U.S.C. § 825*l*(b). Any ambiguity comes in interpreting *City of Tacoma*, not the jurisdictional statute. So we need not consider the parties' arguments on legislative history, statutory canons, or policy.

### C.    Difference Between the Issues Facing the Agencies

The approach by the Corps and Service jettisons not only the statutory text but also the differences in the issues involved in the Commission's proceeding. The Corps evaluated the effect of discharges on a massive water supply crossing several counties; the Commission considered only the effect of the dam and reservoir on a single reservoir in Boulder County. *See, e.g.*, Fed. Appellees' Supp. App'x at 175–78 & n.8 (observing that the Corps' analysis covered the Moffat Project, which "include[d] facilities outside the project boundary and features not within the unit of development").

16

Given the different geographic scopes, the municipality acknowledges that the Corps' analysis extended beyond the Commission's. In fact, the municipality's application to the Commission for an amended license emphasized the differences between the Corps' environmental impact statement and the narrower environmental assessment conducted by the Commission. In the application, the municipality noted that stakeholders had expressed concern with greater diversions of water from the West Slope. Appellants' Supp. App'x at 5. Those waters were in the Corps' jurisdiction but not the Commission's. The municipality spotlighted that difference when arguing that the Commission's inquiry was narrower than the Corps':

> The Corps' [environmental impact statement] analysis of the Moffat Collection System Project includes the impacts of additional diversions on the West Slope. The scope of analysis for the Proposed Project is limited to the [Federal Energy Regulatory Commission's] jurisdiction under the Federal Power Act. . . . [The municipality] distinguishes the two agency authorizations (the Moffat Collection System Project analyzed by the Corps and the Proposed Project analyzed by the [Commission]) as follows: the Corps is asked to authorize the placement of fill in jurisdictional waters of the U.S. associated with construction and operation of the water supply project, identified as the Moffat Collection System Project, while the [Commission] will be asked to authorize the proposed amendments to the licensed facilities and operation of the hydropower project at Gross Reservoir (the Proposed Project). . . . [The municipality] believes *the scope of analysis for [the Commission's] license amendment decision is narrower*.

*Id.* (emphasis added). Given the municipality's focus on the different analyses, how could the conservation organizations have shoehorned their

17

broad geographic challenge to the Corps' analysis into the Commission's narrower inquiry involving only the dam and reservoir?

### D.    Inapplicability of the Commission's Action to the Conservation Organizations' Claims

The conservation organizations don't request relief from the Commission's approval of an amended license. They instead seek relief from decisions by the Corps and Service, and these decisions didn't spring from the Federal Energy Regulatory Commission's licensing process or become part of the Commission's license. Because all of the claims stem from decisions by the Corps and the Service, the jurisdictional statute does not restrict jurisdiction to the court of appeals.

### (1)    Separate Consideration of the Claims

To determine the applicability of the jurisdictional statute, we must decide whether to consider the claims separately or together. The conservation organizations, the Corps, and the Service have argued that we should consider the claims together. We disagree with these parties.

For their part, the Corps and Service appear to argue that we need not parse the separate claims because the Commission could have considered all of them. In their brief, the Corps and Service argued that "the substantive nature of a claim does not dictate whether an exclusive jurisdiction provision applies." Appellees' Resp. Br. at 34. In oral

18

argument, however, the Corps and Service clarified that we *should* consider the jurisdictional issue claim-by-claim.

The conservation organizations argue that we need not parse the separate claims, reasoning that all of the claims involve the challenge to the Corps' issuance of a discharge permit, which lay in the Corps' jurisdiction rather than the Commission's.

But the conservation organizations have challenged the discharge permit through different statutory claims. Given this framing of the challenge, we can consider the exclusivity of jurisdiction only by examining each claim. In other words, whatever *City of Tacoma* meant by the issues inhering "in the controversy," we can apply that test only after we understand what those issues are. And those issues vary here based on the separate statutory claims. So we must separately consider each statutory claim. *See Mokdad v. Lynch*, 804 F.3d 807, 811–15 (6th Cir. 2015) (examining each claim to determine the applicability of the statute providing exclusive jurisdiction in the courts of appeals); *Halifax Cnty. ex rel. Bd. of Supervisors v. Lever*, 718 F.2d 649, 650 (4th Cir. 1983) ("The resolution of [the] issue depends on the inherent nature and character of plaintiffs' action, an issue which requires some review of the record.").[4]

---

[4]    The Corps and Service argue that claim-by-claim consideration could result in separate litigation in district court and the court of appeals. The Corps and Service give the example of Boulder County, which intervened in the Commission proceeding. The Corps and Service argue that Boulder

**(2)    The Claim Under the Clean Water Act**

The conservation organizations allege that the Corps violated the Clean Water Act by failing to

- select the least environmentally damaging practical alternative and

- properly evaluate the project's costs.

But when approving amendment of the license, the Commission had no reason to (1) select the least environmentally damaging practical alternative or (2) evaluate the costs from a discharge permit. These issues affected the Corps' consideration of a discharge permit, not the Commission's approval of an amended license.

The Clean Water Act and National Environmental Policy Act require distinct analyses of alternatives to a proposed project. *See Utahns for Better Transp. v. U.S. Dep't of Transp.*, 305 F.3d 1152, 1163 (10th Cir. 2002). For example, the Corps must address whether the proposed activities constitute the least environmentally damaging practical alternative. *See* 40 C.F.R. § 230.10. But the Commission didn't address

---

County could have sued in the court of appeals, raising the same issues that the conservation organizations seek to challenge in district court.

The problem with this argument is that the issues would differ: Boulder County would be challenging actions by the Commission, and the conservation organizations would be challenging actions by the Corps and Service.

that question. The question for the Commission was just whether reasonable alternatives existed. 40 C.F.R. § 1502.14(a).[5] The conservation organizations thus challenge determinations made by the Corps, which the Commission didn't address.

Even if the jurisdictional statute otherwise applied, it couldn't cover the claim under the Clean Water Act. Under the statute, the court of appeals has jurisdiction over issues only if the Commission could have considered them. *See Williams Nat. Gas Co. v. City of Okla. City*, 890 F.2d 255, 263 (10th Cir. 1989) (stating that the statutory provision on exclusive jurisdiction in the court of appeals (16 U.S.C. § 825*l*(b)) applies when the issue lies within the Federal Energy Regulatory Commission's authority). If we had to review an issue outside the Commission's authority, the statutory procedures would prevent meaningful review by

- limiting our review to the record before the Commission even though other agencies had broader records,

---

[5]    The municipality observes that the conservation organizations made public comments to the Commission about its analyses. But these comments shed no light on the basis for the Commission's decision. In fact, the municipality admits that the Commission

- explained its limited role as a cooperating agency in drafting the environmental impact statement and

- pointed to its supplemental environmental assessment as its final assessment on environmental impacts specific to the licensing process.

21

- requiring exhaustion of the claims in the Commission despite its inability to provide any relief, and

- granting us authority "to affirm, modify, or set aside" only the Commission's order, not the orders of other agencies.

16 U.S.C. § 825*l*(b). Exclusive jurisdiction would thus make sense only if the Commission could have decided the conservation organizations' challenges.

But the Commission acknowledged its inability to decide these challenges, having disavowed authority to review the Corps' permitting decisions. *See Cogeneration, Inc.*, 77 FERC ¶ 61,185; 61,724 (1996) (concluding that the Federal Energy Regulatory Commission lacks authority to determine whether the Corps had erred in issuing a permit); *Millennium Pipeline Co.*, 161 FERC ¶ 61,186, 2017 WL 5513717, at *7 (Nov. 15, 2017) (stating that the Corps bears exclusive authority to implement procedural issues related to the Clean Water Act); *Ruby Pipeline, LLC*, 133 FERC ¶ 61,015; 61,056 (2010) ("To the extent the parties challenge the Army Corps' authority to issue a [discharge permit] or the process of obtaining the permit, the parties must seek redress with the Army Corps."). So the Commission could not have considered the conservation organizations' challenges to the Corps' permit. And if the

Commission couldn't consider the challenges, the court of appeals couldn't obtain jurisdiction. 16 U.S.C. § 825l(b).[6]

The Corps and Service argue that the question is which court should hear the claim, not the Commission's authority to hear the claim. But the statute grants jurisdiction to the court of appeals only over issues that the Commission could have considered. 16 U.S.C. § 825*l*(b). So we must consider the Commission's authority to consider the claim in the first instance.

The Corps and Service argue that the Commission can consider whatever is presented. For this argument, the Corps and Service rely on a Third Circuit opinion: *Adorers of the Blood of Christ v. FERC*, 897 F.3d 187, 197 (3d Cir. 2018). But that case involved a challenge to a Commission order, *id.* at 190, and the Commission has repeatedly declined to consider the validity of other agencies' orders if they don't bear on the Commission's own orders, *see, e.g.*, *High Country Res. Glacier Energy Co.*, 87 FERC ¶ 61,123; 61,492 (1999) ("[I]t is not our role to judge the validity of another agency's delegation practices or decisionmaking.").

---

[6]    The Corps and Service insist that the substantive issues are "related" and "tied" to the Commission's order. Appellees' Resp. Br. at 30, 38. Regardless of the asserted relationship, the Commission lacked authority to decide the actual claims. The applicability of the direct-review provision turns on the Commission's authority to consider the claim itself, not the relationship between the claim and issues within the Commission's authority.

23

*Adorers* didn't suggest otherwise. There the court rejected any inherent limitation on the kinds of legal questions that the Federal Energy Regulatory Commission could decide. *Adorers*, 897 F.3d at 197–98. The court didn't suggest that the Commission could consider challenges to other agencies' orders.

Because the Commission couldn't decide this claim, direct review in the court of appeals would have proven an empty exercise.

### E.    The Claim Under the National Environmental Policy Act

The conservation organizations also alleged that the Corps had violated the National Environmental Policy Act by failing to

- define the purpose and need for the project,

- adequately evaluate the alternatives,

- incorporate all information available, and

- fully consider the impact on climate change.

The municipality argues that the conservation organizations abandoned their argument based on this claim. We disagree, for the conservation organizations' opening brief repeatedly discusses this claim. *See, e.g.*, Appellants' Opening Br. at 34, 46, 48. Having opposed analysis of the jurisdictional question claim-by-claim, *see* p. 19, above, the conservation organizations often refer collectively to their claims as challenges to the actions by the Corps and Service, *see, e.g.*, Appellant's

24

Opening Br. at 34, 39–41. Though the conservation organizations sometimes spotlight one claim over another, they haven't abandoned any of their claims.

The conservation organizations' allegations under the National Environmental Policy Act address action by the Corps, not the Federal Energy Regulatory Commission. The Commission conducted a supplemental environmental assessment, but that assessment addressed environmental issues related to amendment of the license for the hydroelectric project itself—not the municipality's discharge of fill material in the surrounding waters. Fed. Appellees' Supp. App'x at 179 n.25. The Commission otherwise disavowed consideration of the Corps' environmental analysis involving expansion of the reservoir:

> The Supplemental [Environmental Assessment] did not address issues related to the Corps' Final [Environmental Impact Statement], the need for [the municipality's] proposed expansion of the Moffat Collection System, or environmental issues associated with the expansion of the Moffat Collection System that do not pertain directly to the [Commission] license for the Gross Reservoir Hydroelectric Project. These issues were appropriately addressed in the . . . Corps Final [Environmental Impact Statement] for expansion of the Moffat Collection System.

*Id.*

The Corps and Service argue that it's impossible to divide the environmental analyses of the Corps and the Commission. Though division of the analyses might have been difficult, the two analyses were distinct,

25

as the Commission explained. In district court, the conservation organizations challenged only the Corps' analysis, which had stemmed from its environmental impact statement.[7]

---

[7]    In oral argument, the conservation organizations said that they were challenging only the Corps' permit, not its environmental impact statement. But in the supplemental petition, the conservation organizations had asked the district court to set aside the environmental impact statement.

Despite this request, the conservation organizations stated in oral argument that they couldn't challenge the environmental impact statement itself because it wasn't a final agency action. Under the Administrative Procedure Act, administrative actions are reviewable only when they've become final. 5 U.S.C. § 704. Applying the Act, courts differ on whether an environmental impact statement is considered a "final agency action" for purposes of the Administrative Procedure Act. Some courts treat an environmental impact statement as a "final agency action." *See, e.g.*, *Minard Run Oil Co. v. U.S. Forest Serv.*, 670 F.3d 236, 248 (3d Cir. 2011) (concluding that the completion of an environmental impact statement "would constitute final agency action"); *Izaak Walton League of Am. v. Marsh*, 655 F.2d 346, 369 (D.C. Cir. 1981) ("An environmental impact statement is a 'final agency action' within the meaning of the [Administrative Procedure Act]."). Other courts treat an environmental impact statement as a final decision only upon the issuance of a record of decision. *See, e.g.*, *Or. Nat. Desert Ass'n v. Bur. of Land Mgmt.*, 625 F.3d 1092, 1118 (9th Cir. 2010). Once an agency solidifies its environmental impact statement into a record of decision, some courts consider the environmental impact statement a final agency action. *See, e.g.*, *Sierra Club v. Slater*, 120 F.3d 623, 631 (6th Cir. 1997) ("Although this court has never addressed the question, it appears well-established that a final [environmental impact statement] or the [record of decision] issued thereon constitute the 'final agency action' for purposes of the [Administrative Procedure Act].").

We typically decline to address arguments initiated at oral argument. *See Corder v. Lewis Palmer Sch. Dist. No. 38*, 566 F.3d 1219, 1235 n.8 (10th Cir. 2009) ("An argument made for the first time at oral argument . . . will not be considered."). We adhere to that practice here, for we lack briefing on the issue and "confine ourselves to deciding only what is

26

The Corps, Service, and municipality cite cases where the federal courts of appeals had exclusive jurisdiction over challenges under the National Environmental Policy Act. But in all of those cases, the statutory challenges focused on decisions bearing significance only for orders by agencies subject to exclusive review in a court of appeals. *See Nat'l Parks & Conservation Ass'n v. FAA*, 998 F.2d 1523, 1528–29 (10th Cir. 1993) (applying the jurisdictional statute for decisions by the Federal Aviation Administration to a decision by the Bureau of Land Management because the Bureau's "decision-making process [had been] initiated by the provisions of the [Federal Aviation Administration] Act"); *Cal. Save Our Streams Council, Inc. v. Yeutter*, 887 F.2d 908, 911–912 (9th Cir. 1989) (applying the exclusive-review provisions for orders by the Federal Energy Regulatory Commission to a decision by the Forest Service because the Forest Service had imposed conditions lacking "significance outside the [Commission's] licensing process"); *City of Rochester v. Bond*, 603 F.2d 927, 934–35 (D.C. Cir. 1979) (addressing decisions by the Federal Aviation Administration and Federal Communication Commission when jurisdictional statutes required direct review of decisions by these agencies in the court of appeals); *Env't Def. Fund, Inc. v. EPA*, 485 F.2d 780, 783

---

necessary to the disposition of the immediate case." *Whitehouse v. Ill. Cent. R.R.*, 349 U.S. 366, 373 (1955).

(D.C. Cir. 1973) (per curiam) (applying the exclusive-review provisions for orders by the Environmental Protection Agency to a challenge to an Environmental Protection Agency order based on the National Environmental Protection Act). Here the challenges involved statutory compliance by the Corps, not the Commission, and the Corps' decision reached beyond the Commission's jurisdiction.

The Corps, Service, and municipality argue that

- the Commission relied on the Corps' environmental impact statement and

- vacatur of the Corps' environmental impact statement would result in vacatur of the Commission's order.

But vacatur of the environmental impact statement would not necessarily undermine the Commission's licensing decision; the Commission said that it not only had considered the environmental impact statement but also had relied on the Commission's own review and on the municipality's submissions.

Nor would it have made sense for the Commission to rely on the Corps' environmental impact statement. The Corps was addressing impacts on a massive water supply crossing several counties; the Commission was addressing the effects only in a single reservoir in Boulder County. Given the narrower scope of the environmental issues facing the Commission, a successful challenge to the Corps' broader environmental impact statement wouldn't necessarily have affected the Commission's licensing decision.

Granted, the Commission's record incorporated the Corps' findings under the Clean Water Act. But the Commission's *decision* didn't incorporate the Corps' findings. To the contrary, the Commission just recognized the overlap of evidence bearing on the decisions involving amendment of the license and issuance of a discharge permit. Indeed, the Commission expressly acknowledged that

- its "proceeding in no way shield[ed] the Corps from judicial review" and

- "nothing in [the Commission's] proceeding prevented [the conservation organizations] from" separately challenging the Corps' order.

Supp. App'x at 117 n.26.

The Commission did rely on some of the information in the Corps' environmental impact statement. *Id.* at 178 (noting that the Commission's environmental assessment examined "the effects of the portions of the action that were before the Commission, to the extent that those effects were not addressed in the [f]inal [environmental impact statement]"); *id.* at 190 (concluding in the environmental assessment that the licensing project "would not cause environmental effects beyond those identified in the [environmental impact statement] and would, in fact, reduce the level of some effects"). But if we were to extend direct review to the conservation organizations' claims, we would be morphing the Federal Power Act beyond its text, subjecting the Corps' orders to an appellate court's

29

exclusive jurisdiction just because the Commission had relied on some information in the Corps' environmental impact statement.

The Corps, Wildlife Service, and municipality emphasize that the Commission acted as a cooperating agency in drafting the environmental impact statement. But the Commission's role as a cooperating agency is spelled out in an agreement, which states that the Commission participated in drafting the environmental impact statement "independent[ly] of [its] responsibility regarding the license amendment process for the [hydroelectric project]." Supp. App'x at 2. The Corps and Service point to no authority for us to recalibrate our interpretation of the Federal Power Act based on the Commission's role as a cooperating agency.

**F.    Claim Under the Endangered Species Act**

The conservation organizations also invoked the Endangered Species Act based on

- the Service's issuance and subsequent withdrawal of a biological opinion about the green lineage cutthroat trout and

- the Corps' reliance on the Service's decisions.

The municipality contends that the conservation organizations abandoned this claim. This contention is unconvincing because the conservation organizations often referred collectively to their claims. *See* pp. 24–25, above.

The Commission didn't say that it was incorporating the Service's analyses under the Endangered Species Act. So we must decide whether the statutory provision on jurisdiction is otherwise implicated by the conservation organizations' substantive challenge to the Service's decisions.

In applying the Endangered Species Act, the Commission addressed the Service's biological opinions, its consultation with the Corps, and the Service's withdrawal of the first biological opinion.[8] But the Commission didn't incorporate the Service's decisions into the terms of the amended license.

The Corps, Service, and municipality cite cases where courts of appeals exercised exclusive jurisdiction over the Service's opinions that the Commission had solicited and adopted. But those cases involved opinions requested by the Commission and prepared exclusively for its licensing process. *See City of Tacoma v. FERC*, 460 F.3d 53, 76 (D.C. Cir. 2006); *Me. Council of Atl. Salmon Fed'n v. Nat'l Marine Fisheries Serv.*,

---

[8] No green lineage trout exist within the Commission's licensing area. But the Commission stated that it had asked to join the re-consultation because the Service's regulations required agencies to consider "effects of [their] action" beyond "those effects or activities over which [the agencies] exert[] legal authority or control." Fed. Appellees' Supp. App'x at 182 n.31 (quoting Revised Regulations for Interagency Cooperation Under the Endangered Species Act, 84 Fed. Reg. 44,976; 44,990 (Aug. 27, 2019) (amending 50 C.F.R. pt. 402)). Amendment of the license could affect the trout in areas upstream of the licensing area. *Id.*

858 F.3d 690, 691–93 (1st Cir. 2017) (Souter, J.). The Commission didn't

solicit or incorporate the Service's biological opinions. So the court of

appeals lacks exclusive jurisdiction over the Service's biological opinions.

**6.    The effect on the hydroelectric project wouldn't trigger the jurisdictional statute.**

The Corps and Service argue that the statute on exclusive jurisdiction

applied because relief would interfere with the execution of the project.

This argument lumps together the administrative actions because all

of them were meant to facilitate the hydroelectric project licensed by the

Commission. But our inquiry focuses on consideration of the claims

themselves, not their relationship to the proposed activities.

To frame our inquiry, we draw guidance from *PennEast Pipeline Co.*

*v. New Jersey*, 141 S. Ct. 2244 (2021). There the Supreme Court

considered the scope of a provision of the Natural Gas Act, which gave

exclusive jurisdiction to courts of appeals. *Id.* at 2254. The jurisdictional

provision was implicated when the Commission granted the petitioner a

certificate to authorize the installation of a pipeline. *Id.* at 2253. To lay the

pipeline, the petitioner filed condemnation proceedings in federal district

court to obtain rights-of-way on public land owned by a state, and the state

objected. *Id.*

The federal government, as amicus curiae, argued that the state had

needed to assert its objection in the court of appeals, contending (like the

32

Corps, the Service, and the municipality do here) that if the district court were to credit the state's argument, the eventual decision would modify the Commission's order. The Supreme Court rejected this argument, stating that relief wouldn't "'modify' or 'set aside'" the Commission's order because the order had "neither purport[ed] to grant [the petitioner] the right to file a condemnation suit against States nor address[ed] whether [the statute] grants that right." *Id.* at 2254.

The Corps and Service argue that *PennEast* is distinguishable because the Natural Gas Act contained a separate provision authorizing certificate holders to exercise the right of eminent domain in *district courts*. But in *PennEast*, the Supreme Court didn't rely on that provision to allow the state to assert its objection in district court. The *PennEast* court relied on the jurisdictional provision and distinguished *City of Tacoma* on the ground that there the state had sought to modify or set aside a Federal Energy Regulatory Commission order by arguing that "a licensee could not exercise the rights granted to it by the license itself." 141 S. Ct. at 2254.

The Ninth Circuit used similar reasoning in *Snoqualmie Valley Preservation Alliance v. United States Army Corps of Engineers*, 683 F.3d 1155 (9th Cir. 2012). There the Ninth Circuit noted that the petitioner's challenge to the Corps' verification of a nationwide discharge permit might "interfere with activities specifically authorized by the [Federal Energy Regulatory Commission's] license." *Id.* at 1159–60. But the Ninth Circuit

33

declined to require filing in the court of appeals because the challenge had not constituted "an improper collateral attack on the [Commission] license." *Id.*

The Corps and Service point to two factual differences with our case:

1.    *Snoqualmie* involved a nationwide permit, not an individual permit.

2.    The Corps conducted an extensive environmental assessment here, but not in *Snoqualmie*.

*See id.* at 1158–60. But the Corps and Service don't say why these differences matter. Regardless of the nature of the permits and environmental analyses, the Ninth Circuit reasoned that a claimant could petition in federal district court to attack the Corps' permit because the challenge didn't involve the Commission's licensing decision. *Id.* at 1160. This reasoning is just as applicable here even though our case involves an individual permit based on an environmental impact statement.

The opinions in *PennEast* and *Snoqualmie Valley*[9] mirror the Commission's acknowledgments here that its proceedings didn't

• "shield[] the Corps from judicial review" or

---

[9]    *Snoqualmie Valley* isn't binding here. But it's the only other circuit court opinion to address our issue, and we are generally reluctant to create a circuit split just because we might "think the contrary arguments are marginally better." *United States v. Thomas*, 939 F.3d 1121, 1130 (10th Cir. 2019).

- address the need to expand the water supply or mitigate the environmental impact "that do not pertain directly to the [Commission's] license for the [hydroelectric project]."

Fed. Appellees' Supp. App'x at 117 n.26, 179 n.25.

Granted, the Commission's statements do not bind us when deciding the scope of district courts' jurisdiction. *See Lindstrom v. United States*, 510 F.3d 1191, 1195 n.3 (10th Cir. 2007). But the Commission could have amended the license whether or not the Corps had issued a discharge permit. *See, e.g., Pub. Util. Dist. No. 1*, 151 FERC ¶ 62,204; 64,560 (2015); *Clean River Power MR-7, LLC*, 153 FERC ¶ 62,260, 2015 WL 9581364, at *15 (Dec. 30, 2015). Because the license amendment order didn't incorporate the discharge permit, the Commission had no responsibility over the permit itself. *See Duncan's Point Lot Owners Ass'n v. FERC*, 522 F.3d 371, 378 (D.C. Cir. 2008) (stating that the Commission bore only limited responsibilities under the Clean Water Act and had only to monitor and investigate compliance with the Commission's licenses); *see also* 16 U.S.C. § 823*b*(a) (stating that "[t]he Commission shall monitor and investigate compliance with each license and permit issued under this subchapter").

As a practical matter, the municipality needed a discharge permit to raise the dam and expand the reservoir—matters subject to the Commission's licensing decision. So if the conservation organizations

35

succeed on the statutory claims, the hydroelectric project itself might be in jeopardy. But this doesn't mean that

- the Commission could have acted on the challenges outside its regulatory jurisdiction or

- the jurisdictional statute covers orders by the Corps or Service that would have remained in place with or without amendment of the license.

## 7.     Conclusion

The conservation organizations' claims did not attack the merits of the Commission's approval of an amended license. So the district court shouldn't have dismissed the petition for lack of subject-matter jurisdiction. The Federal Power Act's jurisdictional provision applies only to issues inhering in the controversy that the Commission decided, and the conservation organizations did not raise such issues in the petition. We thus reverse and remand for further proceedings in accordance with this opinion.